**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JENNIFFER VALERIA FARIAS-ORTEGA,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**LUIS SOTO, et al.,**<br><br>**Respondents.** | **Civil Action No. 25-17848 (RK)**<br><br>**MEMORANDUM OPINION & ORDER** |

This matter has been opened to the Court by Petitioner's Motion to Enforce the Court's June 3, 2026 Order granting Petitioner's habeas Petition and directing that Respondents provide Petitioner with a bond hearing. (ECF No. 23.) For the reasons explained in this Memorandum Opinion & Order, the Motion to Enforce is GRANTED.[1]

## I. RELEVANT BACKGROUND

Petitioner alleges in the Amended Petition that she entered the United States on May 3, 2022, with her two minor children, after she fled Ecuador due to gender-violence persecution. (ECF No. 10, Amended Petition at ¶¶ 42-43.) Documents submitted by Respondents show that on May 3, 2022, Customs and Border Patrol ("CBP") encountered Petitioner near the United States/Mexico border in Texas, determined that she had unlawfully entered without being inspected or paroled, and took her into custody. (ECF No. 6-1 (Form I-213 dated May 4, 2022 at 2).) CBP determined that Petitioner was inadmissible under INA § 212 (a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an immigrant not in possession of a valid unexpired entry documents and transferred her for further processing. (ECF No. 6-2 (Unexecuted Notice and Order of Expedited

[1] The Court denies the remaining motions for the reasons explained herein.

Removal dated May 4, 2022 at 1.) While in CBP custody, Petitioner claimed a fear of persecution if returned to Ecuador. (*Id.*) According to Petitioner, she and her children were "released" from custody, and she was not issued a Notice to Appear at that time. (*Id.* at ¶¶ 8, 43-44.)

Petitioner subsequently applied for asylum, but her asylum application was dismissed by U.S. Citizen and Immigration Services ("USCIS") on June 4, 2025, because she had not undergone the credible fear screening. (ECF No. 6-3 (Notice of Dismissal dated June 4, 2025).) On August 12, 2025, the Department of Homeland Security ("DHS") belatedly conducted a credible fear screening and placed Petitioner in full removal proceedings under 8 U.S.C. § 1229a, and she was detained the same day. (*See* ECF No. 1-12 (Notice to Appear); ECF No. 10, Amended Petition at ¶¶ 1-2.)

On November 3, 2025, the Immigration Court granted DHS's motion to "pretermit" Petitioner's asylum application, and ordered her removed to Honduras.[2] (ECF No. 1-14 (IJ Order); ECF No. 1-13 (DHS Motion to Pretermit).) Petitioner appealed her order of removal to the Board of Immigration Appeals ("BIA") on November 28, 2025. (ECF No. 7-4 (Payment Receipt for appeal).) That appeal is still pending.

Petitioner sought habeas relief challenging her prolonged detention without bond, and on June 3, 2026, this Court granted Petitioner's habeas petition and found that her detention had become unreasonably prolonged under the standard set forth in *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 210 (3d Cir. 2020). (ECF Nos. 18-19.) The Court ordered Respondents to provide Petitioner with a bond hearing at which DHS must establish by clear and convincing evidence that her continued detention is justified. (*See id.*)

---

[2] By way of background, Petitioner's asylum application was pretermitted, that is, foreclosed without reaching the merits, based on the exception outlined in 8 U.S.C. 1158(a)(2)(A), which permits removal to a "Safe third country" if specific requirements are met.

The bond hearing occurred on June 10, 2026. (ECF No. 23-1.) At that hearing, which is described in more detail below, the Immigration Judge ("IJ") determined that Petitioner was a flight risk and denied bond. (*See* ECF No. 21.) Respondents notified the Court of that outcome, and the Court directed the Clerk to close the matter. (ECF Nos. 21-22.)

On the same day, Petitioner filed the Motion to Enforce, arguing that the bond hearing was fundamentally unfair because the IJ applied the wrong standard of proof and shifted the burden to Petitioner to prove she was not a flight risk. (ECF No. 23.) According to the attorney who represented Petitioner at the bond hearing, DHS filed one piece of evidence in the bond proceeding, Petitioner's I-213 document. In contrast, Petitioner submitted, among other things, a legal memorandum and a 135-page evidentiary submission in advance of the bond hearing, which included her children's medical records, a letter and financial documentation from Petitioner's bond sponsor reflecting willingness and ability to house and support Petitioner, a letter from Petitioner's employer reflecting a willingness to immediately re-employ Petitioner, tax documentation demonstrating Petitioner had paid taxes on her earnings, and numerous letters from family and community members attesting to her good moral character. (ECF No. 23-2, Affidavit of Christina M. Canty, Esq., at ¶¶ 6-7.)

At the bond hearing, the IJ asked Petitioner's attorney to "summarize the merits of [Petitioner's bond request" prior to asking DHS to justify Petitioner's continued detention. (ECF No. 23-1 at 4.) The IJ then questioned Petitioner's attorney about Petitioner's removal order and the basis for her appeal. (*Id.* at 5-7.) Petitioner's attorney confirmed that Petitioner's asylum application was pretermitted and that she was ordered removed to Honduras pursuant to an Asylum

Cooperation Agreement ("ACA") and had appealed that determination.[3] (*Id.* at 5-6.) The IJ then asked "So what is the appeal issue that you are litigating? So what is it?" (*Id.* at 5-6.) Petitioner's attorney stated that Petitioner "did not have her day in court" on her asylum claims and feared removal to Ecuador. The IJ countered that she was ordered removed to Honduras and not Ecuador, where she feared persecution, and Petitioner's attorney indicated that her appeal challenged the ACA pretermit itself. (*Id.* at 6-7.)

Following that exchange, the DHS attorney very briefly argued that Petitioner was a flight risk, noting that she had entered without inspection in violation of the law, had a low likelihood of success on her appeal, and few community ties. (*Id.* at 7-8.) Petitioner's counsel disputed that Petitioner did not have sufficient connections, emphasizing her family obligations, her fixed address, a sponsor who will support her, and an employer who wished to rehire her when she was released from detention. (*Id.* at 4-5, 8-10.)

After hearing argument, the IJ found Petitioner to be a flight risk and denied bond:

> Okay, so this is the decision of the court. It[']s obviously a very sympathetic set of facts. Ultimately, the respondent has an order of removal. She's been ordered moved [sic] to Honduras pursuant to the ACA with that country. I haven't heard arguments given as to why that determination was incorrect to show that to avoid

[3] As noted above, 8 U.S.C. 1158(a)(2)(A), permits removal to a "Safe third country" if specific requirements are met. The United States entered into an ACA with Honduras on March 10, 2025. *See* Agreement Between the Government of the United States of America and the Government of the Republic of Honduras for Cooperation in the Examination of Protection Requests, 90 Fed. Reg. 30076 (Jul. 8, 2025). The BIA recently determined that the noncitizen subject to an ACA "has the burden to establish by a preponderance of the evidence that he or she will more likely than not be persecuted on account of a protected ground or tortured in the relevant third country to avoid application of the safe third country bar" and that IJs do not have jurisdiction to determine if noncitizens have access to a full and fair procedure for asylum in the third country. *See Matter of C-i-g-m- & L-v-s-g-, Respondents*, 29 I. & N. Dec. 291, 291, 94 (Oct. 31, 2025). Nevertheless, the ACA with Honduras is the subject of ongoing federal litigation. *See, e.g.,* Civ. No. 20-116, U.T. v. Barr (D.D.C.). And should the BIA deny her appeal, Petitioner can presumably file a petition for review in the appropriate circuit court. ("PFR").

> application of the ACA, respondent would need to show that the ACA doesn't apply to her, and if it does, if she would, by the proponents [sic] of the evidence, likely be persecuted on account of a protected ground in Honduras, I've heard only fear of return to Ecuador, but that's actually not the issue that resulted in her being ordered removed. It's to Honduras and not Ecuador. And the court does find that to be a great factor in terms of flight risk is that she has no other relief.
>
> In terms of other factors, the court has considered these other circumstances in her case. She is a relatively recent entrant, but however, she does have children here, and it looks like those children have special needs. One of her children, according to this evidence, had heart surgery about six years ago or so. I mean, that can cut different ways. It can be that she needs to attend to them and therefore would be less likely to comply with the order of removal to Honduras.
>
> Again, the main thing for me is I haven't heard anything going against the department's position that she falls under the ACA, which the court previously found. Now, in terms of addressing the burden of proof here, the district court has assigned that burden of proof on the department. It was the department that filed the motion to pretermits [sic], arguing that she hasn't made out an exception to that agreement. The respondent, again, hasn't heard arguments as to that.
>
> I just cannot get around the fact that she has really no relief available except to appeal something that, based on what I have here, is likely going to be final. That, in the court's view, is clear and convincing that she is a flight risk. But I do feel very sorry for her and the situation her family is in.

(*Id.* at 10-12.)

## II. THE MOTION TO ENFORCE THE COURT'S JUNE 3, 2026 ORDER

The Third Circuit has recognized that 8 U.S.C. § 1226(e) does not deprive federal courts of jurisdiction to address due process challenges to bond hearings. Under that provision, Courts "lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision," and "are limited to reviewing only . . . challenges that pertain to the adequacy of process [petitioner] received at [her] bond hearing." *Quinteros v. Warden Pike Cnty. Correctional Facility*, 784 F. App'x 75, 78 (3d Cir. 2019). Therefore, the Court has jurisdiction to determine whether

the bond hearing was fundamentally unfair in violation of this Court's order. *See Ghanem v. Warden Essex Cnty. Corr. Facility*, Civ. A. No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022). "In a fundamentally fair bond hearing, due process has three essential elements." *Id.* The noncitizen "(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests." *Id.* (quoting *Kamara v. Att'y Gen. of U.S.*, 420 F.3d 202, 211 (3d Cir. 2005)). A court may not grant relief merely because it believes the IJ should have weighed the evidence differently, as that argument challenges a discretionary determination that district courts may not review. *See Ghanem*, 2022 WL 574624, at *2.

Having reviewed the transcript of the bond hearing and the relevant record, the Court finds that Petitioner did not receive a constitutionally adequate bond hearing. The IJ was required to hold DHS to the clear and convincing standard of proof in determining whether Petitioner was a flight risk. That standard requires "[e]vidence indicating that the thing to be proved is highly probable or reasonably certain." *Evidence*, Black's Law Dictionary (12th ed. 2024); *see also, e.g., California ex rel. Cooper v. Mitchell Bros.' Santa Ana Theater*, 454 U.S. 90, 93 & n.6 (1981). If a noncitizen poses a risk of flight, that means she is "likely to abscond." *See In re Guerra*, 24 I.& N. Dec. 37, 40 (BIA 2006). But unlike a typical § 1226(a) bond proceeding, Petitioner did not have the burden to prove she was not a flight risk. Instead, DHS had to prove that it is highly probable or reasonably certain that Petitioner would fail to appear for future immigration proceedings or fail to comply with her removal order.

From the outset, it is unclear whether the IJ held DHS to this standard. The IJ began the bond hearing by asking Petitioner's attorney to present the basis for the bond request and

questioned her extensively about Petitioner' removal order and the merits of her appeal prior to having DHS present any arguments or evidence. Following that exchange, the DHS attorney stated DHS' position in five sentences. Although the IJ stated on the record that "the district court has assigned that burden of proof on the department[,]"and made a singular reference to the "clear and convincing" standard, it appears that he placed the burden on Petitioner to show that she was not a flight risk and justify her release on bond. Courts in this District have held that bond hearings are fundamentally unfair where the Court cannot determine whether the IJ relied on the correct standard of proof. *See, e.g., Akhemedov v. Pittman*, No. 25-13734 (MCA), 2026 WL 323404, at *3 (D.N.J. Feb. 6, 2026).

Moreover, it appears that the IJ found Petitioner to be an automatic flight risk because she has a nonfinal removal order and, in his view, her appeal to the BIA may not be successful.[4] The existence of a removal order does not obviate the IJ's obligation to make an individualized determination. The IJ mentions in passing that that he considered Petitioner's "other circumstances," and refers to her children and family obligations; however, he draws no conclusions about those factors on the record and appears to conflate flight risk with the existence of a removal order, stating: "I just cannot get around the fact that she has really no relief available except to appeal something that, based on what I have here, is likely going to be final. That, in the court's view, is clear and convincing that she is a flight risk." (ECF No. 21-3 at 12.)

At least one circuit court has held that a final order of removal, though relevant to the analysis of flight risk, is insufficient on its own to establish flight risk by clear and convincing

[4] There is no indication that the Petitioner's BIA appeal was part of the record in the bond proceeding. This Court makes no determinations about Petitioner's likelihood of success on that appeal. As noted in FN 2, Petitioner can file a PFR in the appropriate circuit court if her appeal is unsuccessful.

evidence. *See Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) (holding that a final, administrative order of removal "is a relevant factor" in determining flight risk, but "it alone does not constitute clear and convincing evidence that [the petitioner] presented a flight risk justifying denial of bond"), *abrogated on other grounds* by *Jennings v. Rodriguez*, 583 U.S. 281 (2018). And lower courts considering this issue have likewise ruled that a bond hearing is fundamentally unfair where the IJ found that the petitioner is a flight risk based solely on the existence of a removal order and failed to consider a petitioner's individual circumstances. *See Wilkins v. Doll*, No. 1:17–cv–02354, 2018 WL 3388032, at *3 (M.D. Pa. July 12, 2018); *Geincharles v. Benzel*, No. 26-cv-06376-ESK, 2026 WL 2149720, at *2 (D.N.J. Jul. 27, 2026); *see also Segura Serrano v. Scott*, No. 2:26–cv–01268, 2026 WL 1674357, at *8 (W.D. Wash. May 26, 2026) ("the fact of a removal order—or the lack of potential forms of relief for a potential future removal order—is not sufficient by itself to deny bond or establish flight risk." (cleaned up)); *Rosales v. Simon*, No. 1:26–cv–00086, 2026 WL 688858, at *5 (E.D. Va. Mar. 11, 2026) ("[A]n individual's bond hearing fails to comport with due process where an Immigration Judge relies on considerations that would lead to an automatic denial of bond in all cases." (internal quotation marks omitted)).

For these reasons, the Court orders Respondents to provide Petitioner with a new bond hearing within seven days. To the extent DHS fails to prove that it is highly probable or reasonably certain that Petitioner will fail to appear at future proceedings and/or comply with her removal order, the IJ shall release Petitioner on reasonable conditions. To the extent the IJ finds that DHS has shown clear and convincing evidence that Petitioner is a flight risk, he or she must provide an individualized determination of Petitioner's interests and include citations to the record evidence and appropriate legal authority regarding flight risk.

Petitioner has also filed Motions to Expedite and for a Temporary Restraining Order in which she argues that release is the appropriate remedy. (ECF Nos. 25-26.) The Court denies the relief sought in these motions, and declines to release Petitioner based on the length of her detention or her conditions of confinement, the latter of which are not extraordinary circumstances sufficient to justify habeas jurisdiction.[5] *See Hope v. Warden*, 972 F.3d 310, 324-25 (3d Cir. 2020).

**IT IS,** on this 10th day of September 2026,

**ORDERED** that this matter shall be marked as **OPEN**; and it is further

**ORDERED** that the Motion to Enforce (ECF No. 23) the Court's June 3, 2026 Order is **GRANTED**; and it is further

**ORDERED that, within seven (7) days, Respondents shall provide Petitioner with a new bond hearing at which DHS bears the burden of proving that Petitioner is a danger or a flight risk by clear and convincing evidence; Petitioner's counsel shall have notice of the bond hearing, a reasonable opportunity to prepare, and be permitted to reschedule the hearing outside the seven-day period, if necessary, without seeking this Court's intervention; and it further**

**ORDERED that if DHS fails to prove by clear and convincing evidence that Petitioner is a flight risk, the IJ shall release Petitioner on reasonable conditions; to the extent the IJ finds that DHS has shown clear and convincing evidence that Petitioner is a flight risk, the IJ must provide an individualized determination of Petitioner's interests and support the**

---

[5] Petitioner alleges she was subjected to a sexually abusive search by a female guard in May 2026, and contends that she is being provided with inadequate medical care for non-life-threatening health conditions. (ECF No. 26-3, Petitioner's Declaration.) Although the Court takes her allegations seriously, it finds that these claims do not amount to extraordinary circumstances sufficient to justify habeas jurisdiction; Petitioner may instead pursue this claim in an appropriate civil action.

**findings with an adequate explanation on the record, including clear citations to record evidence and appropriate legal authority; and it is further**

**ORDERED** that within seven (7) days of that bond hearing, Respondents shall notify the Court of the outcome of that hearing, file a copy of the bond hearing transcript, and request to close this matter; and it is further

**ORDERED** that the Motions to Expedite and for a Temporary Restraining Order (ECF Nos. 25-26), which seek immediate release, are **DENIED**.

ROBERT KIRSCH
United States District Judge